ROBERTSON, TAYLOR & CO. v. SEGLER.

1. A rule was issued in supplementary proceedings requiring the defendant and a judgment debtor of his to show cause why the indebtedness of the latter should not be applied to plaintiffs' demand, and enjoining defendant meanwhile from assigning this judgment. This order was served on the next day one hour after defendant had assigned this judgment to another creditor, in pursuance of a previous promise, defendant having no knowledge of the order, nor of facts sufficient to have put him upon the inquiry. *Held,* that the assignment was valid.
2. The assignee being an innocent party, was entitled to hold on to the assignment.
3. The assignment in this case held to have been delivered.

Before ALDRICH, J., Aiken, June, 1885.

On March 11, 1884, G. P. Segler confessed judgment to Dr. W. H. Timmerman for $3,245.25. At April term, 1885, of the Court of Common Pleas for Aiken County, G. P. Segler obtained judgment against G. C. Coward and T. W. Coward for $446.33; and at the same term, Robertson, Taylor & Co. obtained judgment against G. P. Segler for $550.27. An execution upon this judgment having been returned unsatisfied, the plaintiffs obtained an order from Judge Aldrich, at Barnwell, on May 7, 1885, requiring the Cowards and Segler to show cause before him at Barnwell, on May 22, why the indebtedness of the former to the latter should not be applied to the judgment of plaintiffs against Segler, and, in the meantime, the Cowards were enjoined from paying their indebtedness to Segler to any other person than plaintiffs, and Segler was enjoined from assigning or otherwise disposing of his judgment. This order was served on Segler the next day, May 8, and also on the Cowards.

Defendant made return, that on May 8, before the order was served upon him, and in pursuance of an agreement had with

Dr. Timmerman before defendant obtained his judgment against the Cowards, he had assigned this judgment to Dr. Timmerman, and had no further interest in it.

From the oral testimony taken before the judge, and the affidavits submitted on the hearing of this return, it appeared that plaintiffs' attorney returned from Barnwell with the order of Judge Aldrich on the night of May 7; that on the morning of May 8 attorney for defendant saw plaintiffs' attorney in conversation with the sheriff, and from a remark afterwards made by one Moore and another by the sheriff, defendant's attorney surmised that the sheriff had some paper to be served on Segler, but he did not know what it was, nor was it on file in the clerk's office. This attorney thereupon got the assignment (which bore date May 7) and sent it off by a special messenger, who was instructed to beat Moore to Segler's house, and to tell Segler to sign it at once and send it back. All this was done, and when Moore, the sheriff's deputy, arrived an hour later the paper had been signed, and Segler said to him, "You are beat; you are too late; or words to that effect." The assignment was brought back to defendant's attorney.

The judge, after hearing argument, remarked: "This is a race between creditors. Timmerman had a judgment and so did these plaintiffs here have their judgment, and the contest was to see who would get the money coming from the Cowards' judgment, but this man Segler had promised he would let Dr. Timmerman have that money before the judgment was obtained, and in the contest Timmerman is perfectly innocent. He had nothing to do with it. It was his attorneys trying to collect a debt which a man had promised to pay. There was nothing wrong in it. That was a contest, simply a race between creditors, and Timmerman got the start and kept it. I think he is entitled to the money. Besides, Mr. Segler had a right to prefer his creditors." And he thereupon passed the following order:

This was a rule to show cause served on the defendant and T. W. Coward, G. G. Coward, and M. T. Holley, sheriff, to show cause why the money due on a judgment obtained by the said G. P. Segler v. G. G. Coward and T. W. Coward should not be paid by said G. G. Coward and T. W. Coward over to the plaintiffs

on their judgment which they held against the defendant.   After hearing the evidence herein and also after hearing argument in support of said rule by Messrs. Henderson Bros., and Messrs. Croft & Dunlap, and O. C. Jordan, contra, and after consideration I am of the opinion, as the case presents itself, that it was a race between two creditors as to who would realize the money coming from the Coward judgment.   Timmerman held a valid and an honest judgment against Segler, and Segler had agreed that the Coward judgment as soon as obtained should be transferred to Timmerman in part payment (as far as he could realize thereon) of the judgment that he held against Segler.   This Segler had a right to do having done so without notice of the rule herein.   The assignment to Timmerman must stand.

It is therefore ordered and adjudged, that the rule herein be discharged with ten dollars cost to be paid by the plaintiffs, Robertson, Taylor & Co., and that the defendant have leave to enter up judgment therefor.

From this order the plaintiffs appealed and asked for a reversal upon the following grounds:

1. Because his honor erred in dismissing the rule to show cause and ordering the money paid to W. H. Timmerman, whereas he should have made the rule absolute and directed the money paid to the plaintiffs.

2. Because his honor should have held the Timmerman assignment void, because the testimony showed that Segler, the assignor, had notice sufficient to have put him upon inquiry of the injunction order when he signed the assignment, and because said assignment had not been delivered when the injunction order was served on Segler.

*Messrs. Henderson Bros.*, for appellant, *cited* 55 *Am. Dec.*, 718; 5 *S. C.*, 177; 14 *Id.*, 241, 312; *Hill. Inj.*, 158; *Hoff. Rem.*, 364; *High Inj.*, § 853; 20 *S. C.*, 141; 14 *Wall.*, 69; 30 *N. Y.*, 83.

*Messrs. G. W. Croft* and *O. C. Jordan*, contra, *cited Bump Fr. Conv.*, 13, 15, 179, 182, 184; 1 *Bail.*, 568; *Rice Ch.*, 300; 12 *S. C.*, 166; *Voorh. Code*, 472, a, b.

March 15, 1886. The opinion of the court was delivered by

Mr. Chief Justice Simpson. [Omitting the statement made of the above facts.] It will be observed that there was no question below as to the validity of the assignment, on the ground of its being a fraudulent preference, nor did the Circuit Judge make any ruling on that question. Nor is that question involved in the appeal. The judge regarded the matter as a race between creditors and he decided it upon the legal rights of the parties, the turning point being whether Segler, when he made the assignment, knew that the rule and injunction had been issued.

The issuance of the rule and injunction was upon an *ex parte* proceeding. It was dated on May 7, the same day on which the assignment was dated. Judge Aldrich has found as matter of fact that Segler did not know that the rule had been issued when he executed the assignment. It was not served until May 8, the day after it was signed by the judge and the day of the execution of the assignment. We think the evidence sustains the finding of the judge. In fact, this seems to be admitted in appellant's argument, and also in his ground of appeal; because the exception is not that Segler knew of the rule, but that he had notice sufficient to have put him upon the inquiry. So that the case before us is narrowed down to the point whether Segler did have sufficient notice to put him upon inquiry, and, if so, whether on that account the judgment below should be reversed. The first is a question of fact. The Circuit Judge does not seem to have found in terms on that point, nor does it clearly appear that it was made before him. He said (speaking of the assignment), "This Segler had the right to do, having done so without notice of the rule herein. The assignment to Timmerman must stand." But we suppose that he considered the whole question, both as to actual notice and also constructive. Be that as it may, however, was there sufficient evidence of notice, such as should have put Segler upon the inquiry, and would the inquiry have disclosed to Segler the existence of the rule in advance of service upon him?

The whole matter up to the service of the rule seems to have been a contest between attorneys, each cautious as to the movement of the other. Segler's attorney, it is true, suspected something, but exactly what was being done he did not know, and

Segler himself was thirteen miles away in the country during all the preliminary proceedings and knew nothing about them. It is true it is not absolutely necessary for actual service of the rule and injunction to be made upon the party in order to make him amenable for its violation. If he obtains a knowledge of its contents, and of its having been granted, no matter how he gets his information, he is as much amenable as if the writ had been actually served upon him. See numerous cases cited in note to *Farnsworth* v. *Fowler* (55 *Am. Dec.*, 722), and especially *Skip* v. *Harwood* (3 *Atk.*, 564), in which Lord Hardwicke delivered the opinion, where he held that the attendance of a party in court when the injunction was ordered was sufficient notice. This doctrine was further enlarged by Lord Eldon in *Osborne* v. *Tennant* (14 *Ves.*, 136), where he held that presence in court when the motion for the injunction was made, though the party was not present when the motion was granted and the order pronounced, was still sufficient notice, and this last seems to be the doctrine in this country. *Hull* v. *Thomas* (3 *Edw. Ch.*, 236). We do not think that the facts of the case before the court bring it under even the enlarged rule *supra*. That rule requires either actual notice by service or information derived in some other way of facts showing that the rule had been issued.

But assuming the law to be as contended for by appellant, to wit: that notice of facts sufficient to put the party on the inquiry is as effectual as actual notice or knowledge, and that here there was such notice, would that have required the Circuit Judge to vacate the assignment and to order the Cowards to pay the plaintiff in this proceeding? It is said in *Farnsworth* v. *Fowler*, *supra*, a case relied on by appellant, that "an injunction writ is a writ *in personam* and renders it unlawful in the party to whom it is directed to do the thing therein prohibited," &c. The act being unlawful, it is deemed ineffectual and unavailable as to the purposes intended as though it had not been done. Or if that may not be, on account of the intervention of the rights of innocent persons, who had no knowledge or information of the injunction, the defendant is liable to make indemnity for his unlawful act to the party injured.

Now, the judge has found as matter of fact that the judgment

of Dr. Timmerman was a valid and honest judgment and that he
at least was an innocent party, whatever may be the facts as to
Segler. Segler, on account of his knowledge, if he had such
knowledge, may possibly be in contempt and amenable to the
court for such contempt. But the proceeding below was not in
that direction; it was really a contest between Dr. Timmerman
and the plaintiff. Dr. Timmerman held a paper which upon its
face transferred the Coward judgment to him. On its face a
legal title was conveyed. It was good until vacated, or at least
it was *prima facie* good. The judge found no facts sufficient to
set it aside. He therefore held that it should stand, and his dis-
charge of the rule was the logical and legal result.

We think there was sufficient evidence of the delivery of the
assignment.

It is the judgment of this court, that the judgment of the
Circuit Court be affirmed.